**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 21-21781-MC-TORRES

IN THE MATTER OF THE
EXTRADITION OF
ALEJANDRO JOSE LYONS MUSKUS,
_____/

### ORDER ON THE GOVERNMENT'S MOTION FOR DETENTION

This matter is before the Court on the United States of America's (the "Government") motion for the detention of Alejandro Jose Lyons Musks ("Mr. Lyons") pending a hearing on the certification of his extradition to Columbia pursuant to 18 U.S.C. §§ 3184 *et seq.* [D.E. 11]. Mr. Lyons responded to the Government's motion on June 21, 2021 [D.E. 16] to which the Government replied on June 24, 2021. [D.E. 17]. Therefore, the Government's motion is now ripe for disposition. After careful consideration of the motion, response, reply, relevant authorities, and for the reasons discussed below, the Government's motion for the detention of Mr. Lyons is **GRANTED**.

1

## I.      BACKGROUND

Mr. Lyons took office on January 1, 2012 as the Governor of the Department of Cordoba, Colombia (the "Department"), and served in that role until December 2015.  Mr. Lyons was responsible for the management of royalty funds that the Department received from the development of non-renewable natural resources. Those revenues flowed to a science technology and innovation fund where Colombia financed research and development projects and where Mr. Lyons initiated a scheme to receive kickbacks from government contracts.

Mr. Lyons later created the role of Department Director of Royalties and named Jairo Alberto Zapa Pérez ("Mr. Pérez") to the position.  Mr. Pérez's job was to oversee the process of contracting for science, technology, and innovation projects. Mr. Lyons instructed Mr. Pérez that beneficiaries of these contracts needed to pay a commission of 30% with the proceeds shared between the two.   Mr. Lyons received commissions totaling approximately $2.45 million dollars (under present day conversion rates) from contractual kickbacks.  Although Mr. Pérez often acted as an intermediary negotiating these payments, Mr. Lyons personally met with at least one contractor to discuss the kickback arrangement.  The contractors provided these commission payments to Mr. Pérez who either withdrew the money in cash and delivered them directly to Mr. Lyons or indirectly through a longtime friend.

On October 3, 2017, the Colombia Prosecution Service charged Mr. Lyons with three offenses: (1) embezzlement by appropriation, (2) contracting without compliance with legal requirements, and (3) aggravated conspiracy to commit an

offense.  Mr. Lyons entered a plea agreement and admitted guilt to the aggravated conspiracy charge.  A court accepted the guilty plea on February 20, 2018, and the Colombian Supreme Court sentenced Mr. Lyons to 5 years and 3 months in prison. The Colombia Supreme Court found that there was sufficient evidence supporting Mr. Lyon's conviction because the guilty plea was free and voluntary, two interviews with law enforcement included an admission of culpability, and statements from former co-conspirators confirmed the details of the kickback scheme.

Following his conviction, Mr. Lyons relocated to the United States where he served as a cooperating witness for prosecutors in the United States and Colombia. His cooperation with U.S. officials concluded in January 2019 and, although Mr. Lyons previously agreed to return to Colombia following his cooperation, he failed to do so resulting in the pending petition for extradition.  The Government subsequently filed a petition in this district on May 10, 2021, and consistent with its obligations under the applicable treaty with Columbia and pursuant to 18 U.S.C. 3181 *et seq.*, the Government seeks Mr. Lyons's extradition and his detention pending final disposition.[1]

## II.    ANALYSIS

The Government seeks the extradition of Mr. Lyons because, in addition to the strong presumption that exists against bail in extradition proceedings, he is a significant flight risk.  The Government says that Mr. Lyons has a strong incentive

---

[1]    Mr. Lyons is currently in the custody of the U.S. Marshals Service.

to flee, that he has the financial means to do so, and that he has deliberately stayed in the United States rather than returning to Colombia to serve his sentence.  The Government also adds that, given Mr. Lyons's history of fleeing jurisdictions and his failure to comply with follow through with his promises to return to Columbia, the Government is concerned that he will disappear if released on bail.  The Government further contends that no special circumstances apply to Mr. Lyons and that he should be detained pending final disposition of the extradition petition.

Mr. Lyons opposes the Government's motion in all respects because he is neither a danger to the community nor a significant flight risk.  He also claims that special circumstances entitle him to bail because, among other things, he is a former governor, and he has a long history of cooperating with law enforcement in both the United States and Columbia.  We consider each argument in turn, but before doing so and to inform the analysis that follows, we turn first to the well-establish presumption against bail.

### A.      *The Well-Established Presumption Against Bail*

The federal extradition statute provides no explicit authority for a district court to grant bail to a potential extraditee.  *See* 18 U.S.C. § 3184.  The Eighth Amendment also does not speak to the issue, and neither does the Bail Reform Act.  *See* 18 U.S.C. § 3142 (creating a detailed procedural scheme for making bail determinations in domestic criminal cases but omitting any reference to extradition proceedings).  Courts have instead relied on federal common law, dating back to the early twentieth century, to fill in the gaps.  In the only known or referenced opinion

tackling the issue, *Wright v. Henkel,* the Supreme Court recognized for the first time in 1903 that a court had the power to grant bail in international extradition cases.   190 U.S. 40, 63 (1903).   The Court ruled that "while bail should not ordinarily be granted in cases of foreign extradition," it was also not holding that courts, "may not in any case, and whatever the special circumstances, extend the relief." *Id.*

For over a hundred years following this decision, circuit and district courts have applied the "special circumstances" test for bail determinations in extradition cases.  *See, e.g., Jimenez v. Aristiguieta*, 314 F.2d 649, 653 (5th Cir. 1963) (applying special circumstances analysis under *Wright* in affirming denial of bail); *see also United States v. Kin-Hong,* 83 F.3d 523, 524 (1st Cir. 1996) ("Special circumstances" are limited to situations in which "'the justification [for release] is pressing as well as plain.'") (quoting in part *In re Klein,* 46 F.2d 85, 85 (S.D.N.Y. 1930)); *Kamrin v. United States,* 725 F.2d 1225, 1228 (9th Cir. 1984) ("'[S]pecial circumstances' requirement creates standard for extradition cases different from that for federal criminal cases"); *United States v. Leitner,* 784 F.2d 159 (2d Cir. 1986) (applying special circumstances test in affirming denial of bail); *In re Extradition of Russell,* 805 F.2d 1215, 1216 (5th Cir. 1986) (same); *Beaulieu v. Hartigan,* 554 F.2d 1, 1-2 (1st Cir. 1977) (conducting special circumstances analysis in vacating district court order granting bail).

Courts in our own circuit have regularly applied the same presumption. "[A] defendant in an extradition case will be released on bail only if he can prove 'special

circumstances.'" *Martin v. Warden, Atlanta Pen,* 993 F.2d 824, 827 (11th Cir. 1993) (quoting *Wright,*190 U.S. at 63, and also citing *In re Extradition of Ghandtchi,* 697 F.2d 1037, 1038 (11th Cir. 1983)); *see, e.g., In re Extradition of Shaw,* 2015 WL 521183, at *5 (S.D. Fla. Feb. 6, 2015); *In re Extradition of Pelletier,* 2009 WL 3837660, at *3 (S.D. Fla. Nov. 16, 2009); *In re Extradition of Stern,* 2007 WL 3171362, at *5 (S.D. Fla. Oct. 25, 2007).

Magistrate Judge Hacker has provided a persuasive rationale for this presumption:

> The government's strong interest in denying bail stems from its need to ensure that the United States fulfills its international treaty obligations.   This is because extradition treaties create a binding obligation on the United States government to surrender fugitives to its treaty partners once they are found to be extraditable.  If a foreign fugitive was released by the United States and absconded pending extradition, the government would suffer serious embarrassment, and this could create potential reciprocal noncompliance by other countries. The "paramount importance" of an extradition treaty supports denials of bail in foreign extradition cases.  *The special circumstances test was established to allow for a limited number of cases to be eligible for bail because any risk of flight is too significant a risk for the national interest to tolerate.*

*In re Extradition of Garcia,* 761 F. Supp. 2d 468, 470-71 (S.D. Tex. 2010) (emphasis added) (citations and quotations omitted).

Notably, this explanation relies upon our own Circuit's binding authority in *Jimenez* where Venezuela sought the extradition of a former President and leader of a military junta that ruled Venezuela from 1948 through 1958.  *See* 314 F.2d at 649-50.  After fleeing Venezuela for Miami, the former president was charged in his home country for accessory to murder and financial crimes.  *Id*.  In affirming the

district court's decision to deny bail to the former president, the Fifth Circuit agreed with the lower court because all the relevant facts and circumstances led to the conclusion to deny bail:

> Congress has provided that upon the extradition magistrate's certification to the Secretary of State of his finding of probable cause, the magistrate 'shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made.' 18 U.S.C. § 3184. . . . He has not shown special reasons justifying this court in releasing him on bail. On the contrary, all of the relevant facts and circumstances existing at this time, . . . all lead to the conclusion that the more reasonable and proper course is to deny appellant further release on bail.
>
> ***
>
> *No amount of money could answer the damage that would be sustained by the United States were the appellant to be released on bond, flee the jurisdiction, and be unavailable for surrender, if so determined. The obligation of this country under its treaty with Venezuela is of paramount importance.*

*Jimenez,* 314 F.2d at 652-63 (emphasis added, citations omitted).

An overriding concern in determining whether to grant bail in extradition proceedings is that any release of a detainee is largely antithetical to the entire process. The concept of bail is only relevant in our criminal justice system because of the incentive to appear in court for fear of a penalty that would impact the defendant, and likely his family, if he fled. The adjudicating jurisdiction in that case would get some compensation for the defendant's flight, and its "pound of flesh" so to speak, through executing on the bond or collateral. But, it is unclear how that carrot and stick approach relates to a proceeding where a *foreign jurisdiction* seeks the extradition of a detainee. Frankly it really does not because any bond or collateral forfeited from a detainee's flight would not, as a practical matter, flow to

7

the foreign state or remedy that state's continued inability to adjudicate its wanted defendant. *See Wright,* 190 U.S. at 62 ("The enforcement of the bond, if forfeited, would hardly meet the international demand; and the regaining of the custody of the accused obviously would be surrounded with serious embarrassment.").

A New York District Court aptly described this "absurd" dilemma when denying bond to a defendant charged with crimes in Great Britain:

> Yet even then it is not easy for me to conceive of circumstances that should move the court to admit to bail and not to dismiss the proceeding. In other words, admission to bail and extradition should be in practice an unusual and extraordinary thing, for the whole proceeding is opposed to our historical ideas about bail. Bail is taken in all our courts on the theory of punishing, if not the accused, at least his friends, in the event of his absconding; but there the party seeking to inflict punishment is the commonwealth – state or national. Persons accused of crime in foreign lands have not, presumably, violated the laws of this country; it is therefore absurd for our state or nation to collect money from the friends of the accused. If the bail, however, be so drawn as to cause the money collected on forfeiture to flow to the demanding government, the situation from an international viewpoint is ridiculous, if not insulting.

*U.S. ex rel. McNamara v. Henkel,* 46 F.2d 84, 84-85 (S.D.N.Y. 1912).

Frankly, it is hard to argue with the court's logic. Contemplating bail in any extradition case seems to fly in the face of the court's limited jurisdiction under 18 U.S.C. § 3184. And it is in effect an attempt at fitting a square peg into a round hole. But charged as we are to also apply the Supreme Court's current doctrine granting us limited power to grant bail in an extradition case, we proceed to the task of looking for special circumstances in this case. However, even assuming that special circumstances apply under *Wright,* we cannot grant a request for bail if an extraditee has a significant flight risk.

**B.**     ***Mr. Lyons Poses a Serious Risk of Flight***

In light of the strong presumption against bail, fugitives may not be released on bail unless they demonstrate that they are neither a flight risk nor a danger to the community, *and* that special circumstances warrant their release.  *See Martin*, 993 F.2d at 828 ("[The fugitive] complains only that the district court erred in determining that he was a flight risk. Absent proof of special circumstances, however, Martin is not entitled to bail.").  While "case law . . . reflects an inconsistency among courts in their analysis of flight risk in relation to the 'special circumstances' inquiry," "[m]ost courts treat flight risk as a separate, independent factor from the special circumstances analysis."  *In re Garcia,* 761 F. Supp. 2d at 472.  The courts that examine risk of flight and special circumstances separately "require the potential extraditee to establish the following two factors before [they] can grant bail in a foreign extradition case: (1) 'special circumstances' exist in their particular case; and (2) they are not a flight risk or a danger to the community."  *Id.* at 472–73.

The majority of cases that have examined this question, especially those in our Circuit, have concluded that the risk of flight analysis is a separate inquiry.  *See, e.g., In re Extradition of Shaw,* 2015 WL 521183, at *9 (Matthewman, Mag. J.).  We follow the same approach and require Mr. Lyons to meet his burden of persuasion, at least by a preponderance, to show that he does not pose a serious risk of flight for bail.  This analysis generally involves, among others, several areas of inquiry including a defendant's financial means, foreign connections, age, and the

seriousness of the offenses. *See, e.g.*, *United States v. Madoff*, 316 F. App'x 58, 59 (2d Cir. 2009) (holding that the district court did not err in concluding that the defendant's age and length of his potential sentence were incentives to flee); *Gohir*, 2014 WL 2123402, at *13 (holding that the defendant was a risk of flight because "he is a man of considerable means, with access to substantial resources"); *Beresford-Redman*, 753 F. Supp. 2d at 1091 (noting that "a well-educated and sophisticated individual, facing serious charges in a foreign country . . . has both incentive and ability to flee").

The Government says that Mr. Lyons is a flight risk for three reasons. The Government first claims that Mr. Lyons has a strong incentive to flee because Columbia has already convicted him and, if returned, he would immediately begin a sentence of approximately 5 years. *See Shaw*, 2015 WL 521183, at *9 (noting that "the [fugitive] is facing serious criminal sanctions in Thailand, which fact provides him with a strong incentive to flee"). The Government's second concern is that Mr. Lyons has the financial means to flee because he embezzled almost 2.5 million dollars and that he has the financial largesse to reach any jurisdiction if he wishes to do so.

The Government's third concern is that Mr. Lyons chose to stay in the United States despite a prior promise to return to Columbia more than two years ago. While Mr. Lyons has previously stated that he delayed his return to Columbia because it was necessary to cooperate with prosecutors, the Government finds that unavailing because the relevant criminal proceedings with the United States

concluded in January 2019. The Government claims that Mr. Lyons has no persuasive reason for his continued residence in the United States and that it is questionable whether he will ever return to Columbia on his own accord. *See In re Extradition of Beresford-Redman*, 753 F. Supp. 2d 1078, 1091 (C.D. Cal. 2010) ("[T]hough [the fugitive] could return to Mexico and voluntarily surrender, he has not done so . . . The Court finds that [the fugitive] has both incentive and ability to flee."). Thus, given the incentive to flee, the financial means of doing so, and the questionable track record of failing to return to Colombia, the Government concludes that Mr. Lyons is a flight risk and should be detained pending final disposition of the extradition petition.

Mr. Lyons's response is that he is not a flight risk because he is a man of good moral character who supports his family and uplifts his community. He also asks that the Court consider his history of cooperation with the United States and Colombia. He references, for example, his participation as a witness in a Colombian prosecution via videoconference on May 10, 2021 as a means of good faith. He further states that he is a husband and father of three children in Miami and that he has a strong incentive to remain here pending final disposition of the Government's petition because otherwise he will jeopardize the Visa applications of his family members. To alleviate any additional concerns, Mr. Lyons asserts that he has repeatedly expressed his willingness to serve his sentence and that his only concern about returning to Colombia is that he may be subjected to harm when he arrives there. He fears, for instance, that his prior testimony will backfire and that

powerful individuals in Columbia will seek retribution against him for assisting federal prosecutors in the United States. Ultimately, Mr. Lyons maintains that he has history of cooperation with the United States, that he has no objection to serving his Colombian sentence, and that the primary concern now is whether Columbia will guarantee his safe return.

While the Court is not unsympathetic to some of these concerns, none of Mr. Lyons's arguments are sufficiently compelling because, while he may be a man of good character who loves and supports his family, he fails to rebut any of the Government's reasons for finding him a flight risk.[2] Mr. Lyons makes no mention, for instance, of the assertion that he has the financial means to flee or the allegations that he embezzled $2.45 million dollars. These allegations support the Government's position because there is a notable concern that Mr. Lyons, unlike many fugitives, has access to significant resources that give him a motive and means to flee. *See In re Extradition of Gohir*, 2014 WL 2123402, at *12-*13 (D. Nev. May 21, 2014); *Extradition of Azizi*, 2014 WL 1995083, at *3 (N.D. Cal. May 13, 2014) (holding that the defendant posed a risk of flight partly because he was "a man of considerable means, with access to substantial resources," even though his family was willing to post several properties as security for his bond); *Matter of Extradition of Ye Gon*, 2009 WL 3336092, at *4 (D.D.C. Oct. 15, 2009) (noting that "any individual who is facing serious jail time if convicted and who has at his

---

[2]     We accept at face value that Mr. Lyons is a man of good moral character, but we also acknowledge that he presently stands *convicted* of bribery and corruption. The issue now is whether he should be extradited in order to begin his formal sentence.

disposal over $200 million U.S. dollars in cash has both the motive and means to flee") *Hababou v. Albright*, 82 F. Supp. 2d 347, 352 (D.N.J. 2000) (finding a risk of flight "based on the seriousness of the domestic charges, and based on petitioner's financial wherewithal and potential international safe harbors[,]" which present an "enormous incentive and opportunity to flee").

Mr. Lyons tries to diminish his flight risk by referencing his ties to the South Florida community and the presence of his family members in the United States.[3] But, the relevant caselaw rejects both arguments. *See, e.g.*, *United States v. Snyder*, 2013 WL 1364275, at *5 (D. Ariz. Apr. 3, 2013) (holding that the defendant's ties to the community, including owning a home, caring for her eleven-year-old step daughter, and being an American citizen, were not enough to overcome her risk of flight); *Duran v. United States*, 36 F. Supp. 2d 622, 628 (S.D.N.Y. 1999) (holding that the defendant posed a serious flight risk, despite his significant ties to the community). And nothing in Mr. Lyons's response grapples with his prior conviction or his upcoming sentence of approximately 5 years waiting for him in Colombia. That amount of time cannot be ignored because, although the sentence is not necessarily extensive, it represents a forthcoming incarceration pending his extradition to Columbia. *See United States v. Rankin*, 289 F. Supp. 3d 846, 849 (S.D. Ohio 2017) ("The length of a potential sentence bears on a defendant's risk of flight.").

---

[3]   Mr. Lyons asserts, in four short sentences, that he is not a danger to the community. There is no need to consider this argument because, as a flight risk, he is ineligible for bail in an extradition proceeding in any event.

A further cause of concern is that Mr. Lyons promised to return to Columbia more than two years ago but has remained in the United States with no timetable set for his return.  That suggests Mr. Lyons has no intention of returning – at least anytime soon – and that the reason for his continued residence in the United States is, in part, to avoid incarceration.  *See United States v. Botero*, 604 F. Supp. 1028, 1035 (S.D. Fla. 1985) ("In the context of determining whether a defendant poses a substantial risk of flight, this Court does not find any meaningful distinction between a person who left the country when he learned of pending charges and one who already outside the country refuses to return to face these charges. The intent is the same—the avoidance of prosecution.").  Mr. Lyons even admits as much in his response because he expresses a generic fear that individuals in Colombia will extract revenge on him and that his life will be in danger when he lands on foreign soil.  Maybe so, but this only increases the risk of flight for bail purposes and undermines Mr. Lyons's position in this proceeding.

Moreover humanitarian concerns are not dispositive considerations for this Court to weigh when it comes to the limited question whether Mr. Lyons is entitled to bail.  It is also arguably not relevant at all for our purposes because questions on whether an extradition should be denied on humanitarian grounds is generally a matter reserved to the Secretary of State.  *See Martin*, 993 F.2d at 830 n.10 ("We explicitly held that judicial intervention in extradition proceedings based on humanitarian considerations is inappropriate.  humanitarian considerations are matters properly reviewed by the Department of State.") (citation omitted).  We

need not answer that question, of course, because the pending motion here is limited to whether we must detain Mr. Lyons pending final disposition of the Government's extradition petition.  If Mr. Lyons seeks to renew this argument at his final extradition hearing and in response to the Government's petition, he is free to do so.  However, given the procedural posture of the pending motion and the record showing that Mr. Lyons has the financial resources and motive to flee, he poses a substantial flight risk sufficient to grant the Government's motion for detention.

## C.   _No Special Circumstances Exist in this Record_

Although the Court's analysis could end here with a finding that Mr. Lyons poses a substantial fight risk, we consider Mr. Lyons's second argument that special circumstances warrant his release.  Mr. Lyons identifies a total of five special circumstances entitling him to bail, including (1) his cooperation with law enforcement and Colombian government with prosecutions, (2) his role as the former governor of Cordoba, (3) the absence of any flight risk, (4) Colombia's failure to prioritize his extradition, (5) the health risks to his health due to coronavirus pandemic.[4]  We consider each argument in turn, except for the absence of any flight risk for the reasons already stated.

---

[4]    Mr. Lyons subdivides his special circumstances into six categories.  But, given that his cooperation with law enforcement and Colombian prosecutions presents two sides of the same coin, we consider both collectively.

### 1.    *Cooperation with Law Enforcement*

Mr. Lyons first identifies his cooperation with law enforcement in the United States and Colombia as a special circumstance.  He references, for example, a prior statement from the Government where it acknowledges his assistance to law enforcement and how the U.S. Attorney's Office was appreciative of his efforts despite putting himself at great personal risk.  He also says that his cooperation is still required in Colombia prosecutions and that he recently missed an opportunity to testify on May 26, 2021 because of his detention.  When Mr. Lyons raised this concern with the Government and the need to testify via videoconference, the Government expressed a willingness to make this opportunity available.  But, present circumstances have made it difficult to complete the necessary arrangements and, even if Mr. Lyons's lawyer is able to work collaboratively with the Government, the Bureau of Prisons, and Colombian authorities, Mr. Lyons is concerned that his testimony will suffer because he is without access to his documents, notes, or counsel.  For these reasons, Mr. Lyons asks that the Court treat his cooperation with law enforcement as a special circumstance so that he may continue to support the United States and Colombia.

Mr. Lyons's arguments are unavailing because "'[p]ending civil litigation' is rarely found to constitute 'special circumstances'; it is only if the court is convinced that the defendant's personal participation in the conduct of the civil litigation is absolutely and immediately necessary that it is it deemed a sufficient 'special circumstance' to warrant release on bond." *United States v. Hills*, 765 F. Supp. 381,

386 (E.D. Mich. 1991).   Mr. Lyons fails to meet this standard because his cooperation with the United States is already complete with no pending civil or criminal litigation to justify his release.  The government clearly believes that it no longer requires his assistance.

And as for his cooperation with Colombian criminal authorities, even if those proceedings are indeed ongoing and require his substantial assistance, surely that would be furthered by his presence in that jurisdiction, not here.  And because this extradition proceeding must be adjudicated at the Colombian government's request, we surely should defer to that foreign jurisdiction in assessing the priority that should be given to Mr. Lyons's cooperation.  So this matter certainly does not present any special circumstance for bail purposes.

Finally, even if theoretically it could, Mr. Lyons's concerns are overstated. He complains that his release is required because of the difficulties in arranging a videoconference with Colombian authorities while detained at the Federal Detention Center.  But, that assertion is overstated because he admits that his lawyer can coordinate with the Government, the Bureau of Prisons, and Colombian authorities to make videoconferencing a possibility.  The only potential hiccup is that Mr. Lyons's testimony might not be as helpful to Colombia because he does not have access to his documents, notes, or counsel.  Yet, if the benefit of Mr. Lyons's testimony is for the benefit of Colombia and the requesting country is willing to accept that limitation pending his extradition, that concern is not for Mr. Lyons to have.  That concern belongs to Colombia.  And if Colombia is willing to accept that

limitation – as it must pending final disposition of the Government's petition – there is nothing about his cooperation with law enforcement that has a logical relationship or nexus to his need for release. Thus, Mr. Lyons's cooperation with law enforcement fails to constitute a special circumstance.

### 2.   *Former Governor of Cordoba*

Mr. Lyons's second basis for identifying a special circumstance is his status as a former governor of thirty Colombian municipalities. There is some support for a former head of state seeking release pending extradition. Mr. Lyons relies primarily on the decision in the *Matter of Extradition of Ricardo Alberto Martinelli Berrocal*, 263 F. Supp. 3d 1280, 1303 (S.D. Fla. 2017), because there the Court acknowledged that a former head of state seeking release pending extradition is, in theory, consistent with the Supreme Court's decision in *Wright* and might be unusual enough to give rise to special considerations:

> For our part, we find that this unique case does give rise, at least in theory, to the type of "special circumstance" that *Wright* may have been envisioning. The extraordinary nature of such an extradition request implicates significant foreign relations, comity, and international law issues. While those issues are hashed out, it is not inconceivable that a defendant in Pres. Martinelli's shoes would be granted bail solely on this basis. So we will proceed with the risk of flight analysis to determine if we should grant this extraordinary Defendant special consideration. But we do so recognizing that, but for that unique aspect of the case, the record here does not present any traditional special circumstances that would otherwise justify bail pending final adjudication.

*Id*. at 1303.

However, there is a noticeable difference between the facts here and *Martinelli*. The latter concerned a former head of a state of a sovereign power,

whereas here Mr. Lyons was merely a governor of thirty municipalities.    As honorable and important as such a position may be, and while there may be some similarities between the two positions, Mr. Lyons does not stand in the same shoes a head of state.

If, for instance, a foreign jurisdiction was tasked with extraditing an American governor or mayor to face corruption charges here, we would be rightly irked if that jurisdiction afforded that accused special consideration because of their former status.  We must grant Colombia that same deference.

Here we are not dealing with a former head of state.  The unique comity and security concerns that the Court was dealing with in *Martinelli* are simply not present here.  But even assuming that the comparison fits and the status of a former governor qualifies as a special circumstance, Mr. Lyons is a significant flight risk for the reasons already discussed.  The result is thus the same with no availability for release pending final disposition of the extradition petition.

### 3.    *Colombia's Failure to Prioritize Extradition*

Mr. Lyons's next argument is that Colombia's failure to prioritize his extradition is a special circumstance because his conviction took place in 2018 and the petition here did not seek his arrest until May 2021.  Mr. Lyons says that, during these intervening years, he lived openly in the United States and cooperated with Colombian officials both remotely and at the local consulate.  He also points out that Colombia did not certify the documents seeking his extradition until March 25, 2021, and that the requesting country allowed him to remain in the United

States unabated.  Given that Colombia failed to act with any urgency in seeking his extradition, Mr. Lyons claims that there is no credible argument that he is a flight risk and that it is an open question as to why the country seeks his extradition now when several years have passed following his conviction.

This argument lacks merit, for many of the same reasons articulated in the *Matter of Extradition of Drumm*, 150 F. Supp. 3d 92 (D. Mass. 2015).  There, the court denied the defendant's motion for release on bail pending extradition proceedings, in part, because the defendant failed to show diplomatic necessity as a special circumstance.  *See id*. at 100.  The court held that Ireland did not demonstrate a lack of urgency or necessity in its request for the defendant's extradition, despite the fact that the underlying criminal charges against the defendant came around *seven* years earlier.  *Id*. at 98-99.  The court further explained that "it appears that Ireland has been actively investigating the case since 2009 and that the delay in charging Mr. Drumm was attributable, at least in part, to his own decision to relocate to the United States."  *Id*.

A number of other courts have rejected similar arguments concerning the failure to act swiftly in seeking extradition.  *See In re Extradition of Garcia*, 615 F. Supp. 2d 162, 171-72, 175 (S.D.N.Y. 2009) (denying the defendant's application for bail partly because he failed to show diplomatic necessity as a  special circumstance, despite the fact that the Philippines charged him three years before commencing extradition proceedings formally); *United States v. De Loera*, 2006 WL 1518981, at *3-*4 (N.D. Ind. May 31, 2006) (ordering that the defendant be detained until

20

further order partly because he failed to show special circumstances, despite that his warrant was issued approximately ten to eleven years before Mexico requested his extradition); *In re Extradition of Harrison*, 2004 WL 1145831, at *9 (S.D.N.Y. May 21, 2004) (denying the defendant's application for bail because he "failed to demonstrate the presence of special circumstances," because Belgium's delay in requesting his provisional arrest did not prolong his incarceration).

The reason courts find these arguments unpersuasive is because requesting countries often have no obligation to explain a delay in seeking extradition. There is nothing in the extradition statute or the governing treaty that relieves the United States of its obligation to surrender a fugitive simply because a certain amount of time has passed between the charged conduct and the extradition request. The only requirement that sometimes arises is whether the request complies with a statute of limitations. Yet, that concern is found nowhere in this record. All that Mr. Lyons complains about, without much authority, is that Colombia waited too long and without an adequate justification in seeking his extradition. But, "the Constitution does not of its own force impose on foreign governments the obligation to act speedily in seeking extradition of a fugitive from the United States." *Matter of Extradition of Kraiselburd*, 786 F.2d 1395, 1398 (9th Cir. 1986) (citing *Kamrin v. United States,* 725 F.2d 1225, 1227-28 (9th Cir. 1986) (holding due process protections not applicable where Australia sought extradition many years after crime occurred)).

Notwithstanding these principles, Mr. Lyons characterizes this case as a multi-year delay between his conviction in March 2018 and his May 2021 arrest. He fails to mention, however, that the Colombia government allowed him to remain in the United States for the purpose of prosecuting certain crimes. And after many of these have now ended, Colombia requests Mr. Lyons to voluntarily return and serve his sentence. He declined the opportunity to surrender himself and that is what necessitated the Government's petition in the first place.

The three-year timeframe between Mr. Lyons's conviction and arrest is also much shorter than other cases where courts have rejected similar arguments based on a requesting country's delay in seeking extradition. *See United States v. Risner*, 2018 WL 6809796, at *23 (N.D. Tex. Dec. 27, 2018) ("[T]he Court is not persuaded that Risner must be released because, collectively, Colombia and the United States took almost 20 years from the date of Risner's conviction's affirmance on appeal by Colombia's Supreme Court of Justice, Criminal Cassation Division to initiate extradition proceedings."); *Matter of Extradition of Drumm*, 150 F. Supp. 3d at 99 ("The Court . . . does not find that the interval of time between the defendant's alleged conduct and Ireland's extradition request demonstrates a lack of urgency on Ireland's part in prosecuting this matter."). It is therefore unclear how the mere passage of time constitutes a special circumstance when the record shows that Columbia allowed Mr. Lyons to remain in the United States for a specific purpose and, when he completed that objective, the requesting country sought his return.

As such, the three-year timespan between Mr. Lyons's conviction and the Government's petition for extradition is not a special circumstance.[5]

### 4.      *The Health Risks of the Coronavirus Pandemic*

Mr. Lyons's final argument is that a special circumstance exists due to his pre-existing health conditions and the ongoing coronavirus pandemic.   He specifically references a heart condition, an irregular heartbeat, and the need to take medication.  He also claims that, according to the Centers for Disease Control and Prevention, his medical conditions make him highly susceptible to being severely ill if he contracts the coronavirus and that the risk of exposure is far greater in a detention facility compared to having the opportunity to remain at home.  Hence, Mr. Lyons concludes that he should be entitled to release because the possibility of contracting the coronavirus in a detention facility subjects him to either severe illness or death.

This is not the first time that an extraditee has attempted to use the coronavirus pandemic as a special circumstance to seek release.   Courts have repeatedly rejected this argument because, while a detainee may have certain medical concerns and a risk of contracting the coronavirus, the current pandemic

---

[5]      To the extent Colombia's failure to timely seek extradition is a relevant consideration that Mr. Lyons seeks to raise as a defense to the petition, he should present this argument to the Secretary of State.  The executive branch, unlike the judicial branch, is tasked with these responsibilities.  *See Martin*, 993 F.2d at 830 (finding that an extraditee "should direct his argument that extradition is unjust in this case based on Canada's alleged lengthy delay in seeking extradition or on humanitarian grounds to the Executive Branch.   The Secretary of State will, ultimately, determine whether Martin should be surrendered pursuant to the Extradition Treaty.").

exists globally. *See Matter of Extradition of Bell*, 2021 WL 1616127, at *6 (S.D. Fla. Apr. 26, 2021) ("[T]he COVID-19 global pandemic is just that: a *global* pandemic that exists in the UK as well as in this country.") (emphasis in original) (citing *Risner v. Fowler*, 458 F. Supp. 3d 495, 500-05 (N.D. Tex. 2020) (concluding that the risk of contracting a virus was not a "special circumstance" even for a defendant with underlying health conditions)). Indeed, there is nothing "special" about the risks that Mr. Lyons raises because the coronavirus exists in the United States, Colombia, any detention facility, and even his own home. And that is particularly true now where the current coronavirus variant is wreaking havoc in Miami-Dade County.

In any event Mr. Lyons also fails to point to any case where a pandemic constitutes a special circumstance. The opposite is true because, based on the undersigned's review of relevant cases, every court that has considered whether the coronavirus constitutes a special circumstance has answered that question in the negative. *See, e.g.*, *Matter of Extradition of Mednard*, 2021 WL 1264260, at *3 (E.D.N.Y. Apr. 5, 2021) ("While the ongoing COVID-19 pandemic presents difficult circumstances for all detained defendants, the pandemic does not present 'special circumstances' for Mednard such that he should be granted bail."); *Matter of Extradition of Carr*, 2020 WL 4816052, at *5 (N.D. Ill. Aug. 18, 2020) (collecting cases and finding that other courts have concluded that the risk of contracting COVID-19 is insufficient to constitute special circumstances). And we see no reason to depart from these well-reasoned decisions where courts have long held that the

possibility of serious and dangerous mental health consequences is not a special circumstance. *See United States v. Nolan*, 2009 WL 4544699, at *3 (N.D. Ill. Dec. 1, 2009) (noting that the deterioration of the defendant's health was not a special circumstance, despite claims of "serious and dangerous mental health consequences" and ongoing treatment for skin cancer) (internal quotations omitted).

However, even putting aside these cases and the special circumstances analysis, the harm Mr. Lyons raises is not as detrimental as he makes it out to be because all adults in Florida have been eligible for the COVID-19 vaccine since April 5, 2021. It is unclear if Mr. Lyons has taken advantage of this opportunity, but the Bureau of Prisons has begun a comprehensive vaccination effort where the most recent update shows 651 inmate inoculations at the Federal Detention Center in Miami. This suggests, if anything, that the detention facility where Mr. Lyons is presently housed, pending final disposition of the extradition petition, is either close to or has achieved communal immunity thresholds that exceed the United States as a whole. He may therefore be safer in a federal detention center where he has access to medicine, food, and other provisions than elsewhere in the United States.

In sum, Mr. Lyons has not presented any recognizable special circumstances in this case that persuade us to depart from the general accepted rule that bail does not lie for extradition proceedings.

### D. *The General Rule Against Bail Should Apply*

Some closing remarks are in order based upon the presumption that applies here, the significant risk of flight that exists, and the absence of any special

circumstances.  These considerations, when considered together, leave us no choice but to grant the government's motion for detention and to deny Mr. Lyons's motion for release.  We should guard against allowing our Nation's treaty obligations to suffer from an errant bail determination over an individual with the means, motive, and power to abandon his defense of this case.  Mr. Lyons maintains that his forthcoming sentence in Colombia will subject him to harm or death.  But, those arguments, to the extent viable, are more suited in defense of the petition or better yet to the Secretary of State because this case – like almost all other extradition matters – presents too great a risk to the Court and the Executive Branch.  Our Nation's obligations arising from treaties with a foreign power are paramount and these agreements are, after all, the law of the land and fully enforceable under the Supremacy Clause.  *See, e.g., Sanchez-Llamas v. Oregon,* 548 U.S. 331, 346-47 (2006) ("And where a treaty provides for a particular judicial remedy, there is no issue of intruding on the constitutional prerogatives of the States or the other federal branches. Courts must apply the remedy as a requirement of federal law.").

Further, from a practical perspective, the enforcement of extradition treaties is one that we should take very seriously.  We undoubtedly invoke extradition treaties for cases pending in our jurisdictions far more than we are called upon to extradite persons wanted in foreign countries.  Thus, our Executive Branch has a vested interest in enforcing our own treaty obligations for fear that other treaty partners will refrain from doing so in the future.  And a difficult but necessary measure in carrying out that responsibility is to secure a wanted individual and

surrender him or her to the foreign jurisdiction.  That is our first and foremost obligation that we are bound to enforce.  As a result, we are hesitant to release this or any other extraditable defendant if it unduly risks that responsibility once the Executive Branch has initiated the extradition process.  *See also Munaf v. Geren,* 553 U.S. 674, 702 (2008) ("The Judiciary is not suited to second-guess such determinations—determinations that would require federal courts to pass judgment on foreign justice systems and undermine the Government's ability to speak with one voice in this area.  *See* The Federalist No. 42, p. 279 (J. Cooke ed. 1961) (J. Madison) ("If we are to be one nation in any respect, it clearly ought to be in respect to other nations"); *Wright,* 190 U.S. at 62 ("The enforcement of the bond, if forfeited, would hardly meet the international demand; and the regaining of the custody of the accused obviously would be surrounded with serious embarrassment."). Accordingly, the Government's motion for detention is **GRANTED** and Mr. Lyons's motion for release on bail is **DENIED**.

### III.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED**:

A.      The Government's for detention is **GRANTED**.

B.      Mr. Lyons's motion for release on bail is **DENIED**.

C.      Mr. Lyons shall remain in the custody of the United States Marshal pending further court order.

D.      The parties shall confer and promptly advise the Court on their availability and preferred dates for a final extradition hearing.  The Court will then

set the final extradition hearing in the James Lawrence King Federal Justice Building, 99 N.E. 4th Street, Courtroom 10-5, Miami, Florida.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 27th day of July, 2021.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge